IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PHILIP L. HALL,                      )
                                     )
            Plaintiff,               )
                                     )
                                     )  Case No. CIV-19-213-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
            Defendant.               )

**OPINION AND ORDER**

Plaintiff Philip L. Hall (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 45 years old at the time of the most recent decision. He has a high school education and worked in the past as a carpet cleaner. Claimant alleges an inability to work beginning on June 29, 2012, due to seizures, scoliosis, neurofibromatosis, and memory problems.

## Procedural History

On November 8, 2012, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On

November 25, 2014, ALJ Lantz McClain entered an unfavorable decision. Claimant appealed the matter, and the case was reversed and remanded by United States District Judge Ronald A. White for further proceedings on September 13, 2017. On November 20, 2017, the Appeals Council remanded the case pursuant to the district court's order.

Claimant filed a subsequent claim under Title II and Title XVI on April 26, 2016. At the direction of the Appeals Council, ALJ McClain consolidated the claims. He conducted an administrative hearing in Fayetteville, Arkansas, on June 25, 2018, at which Claimant was present and testified. On August 21, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 1, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error by (1) failing to properly assess medical source opinions, and (2) failing to perform a proper evaluation at step five of the sequential evaluation process.

**Evaluation of Medical Source Opinions**

In his decision, the ALJ found Claimant suffered from severe impairments of history of seizures, scoliosis with Harrington rod placement as a child, hypertension, and obesity. (Tr. 495). He determined Claimant could perform light work with additional limitations. In so doing, the ALJ found Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. Claimant could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. Claimant was to avoid hazards such as heights and open machinery. (Tr. 498).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of cashier II and cafeteria attendant, all of which he found existed in sufficient numbers in the national economy. (Tr. 508). As a result, the ALJ concluded Claimant was not under a disability from June 29, 2012, through the date of the decision. (Tr. 509).

Claimant argues the ALJ failed to properly consider the opinions of the non-examining state agency psychologists regarding his alleged mental impairments when determining that his mental impairments were non-severe at step two. He maintains that the ALJ failed to explain the inconsistencies between the opinions and then failed to include any mental limitations in the RFC assessment and the hypothetical questions to the VE.

On February 5, 2013, state agency psychologist Ruth Ann Mertens, Ph.D., reviewed the record and determined Claimant had a medically determinable impairment of organic mental disorders that was non-severe. She concluded there was insufficient evidence to rate the "B" or "C" criteria. (Tr. 87-88, 96-97).

On June 6, 2013, state agency consultant Melinda Shaver, Ph.D., examined Claimant. Claimant was cooperative and friendly, had good eye contact, neutral mood, and a "happy" affect. Claimant indicated to Dr. Shaver he was applying for disability because of physical limitations. Claimant reported memory problems, but he had not received mental health treatment, nor did he take an anti-depressant. He reportedly managed most of his own activities of daily living, and he denied needing help with self-care. Claimant socialized with family and friends, and he enjoyed fishing, playing chess, and spending time with his children. Upon examining Claimant, Dr. Shaver noted his eye contact was good and behavior was appropriate. He did not exhibit any evidence of a thought

6

disorder, but his remote and recent memory appeared poor as did his knowledge of general information. He appeared to be of average intelligence, insight was fair, and judgment was good. Dr. Shaver assessed Claimant with cognitive disorder not otherwise specified and assigned him a GAF score of 80. (Tr. 377-80).

On July 19, 2013, state agency psychologist Lester Barnett, Ph.D., determined Claimant had a medically determinable impairment of organic mental disorders, noting Claimant had mild restrictions of activities of daily living, difficulties maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. He determined there was insufficient evidence to rate whether Claimant had repeated episodes of decompensation of extended duration. He rated the impairment non-severe. (Tr. 110, 122).

On August 25, 2016, state agency psychologist Cynthia Kampschaefer, Ph.D., determined Claimant had a severe impairment for organic mental disorders. She concluded Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (Tr. 1520-21, 1523-25, 1531).

On January 9, 2017, state agency psychologist Carolyn Goodrich, Ph.D., reviewed the record and found Claimant's anxiety-related disorders were non-severe, causing only mild limitations

7

in activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. She determined Claimant had no repeated episodes of decompensation of extended duration. (Tr. 1543-45). Dr. Goodrich also reviewed the record for an impairment of organic mental disorders and determined it was non-severe. She found Claimant had no restrictions in activities of daily living, difficulties in maintaining social functioning, or difficulties in maintaining concentration, persistence or pace. However, Claimant had one or two episodes of decompensation of extended duration. (Tr. 1555-56).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]'" *Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

In his decision, the ALJ found Claimant suffered from a medically determinable impairment of neurocognitive disorder not otherwise specified (with poor memory) and determined it was non-

8

severe because it did not cause more than minimal limitation in Claimant's ability to perform basic mental work activities. (Tr. 496). The ALJ specifically considered the four functional areas and determined Claimant had no limitations in the areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting and managing oneself. In making his determination he relied on Claimant's function report and the record evidence. (Tr. 496-97).

In his discussion of the RFC, the ALJ specifically addressed the opinion evidence regarding Claimant's mental impairments, including the consultative examination by Dr. Shaver. He detailed her findings, noting she assessed Claimant with cognitive disorder not otherwise specified and assigned him a GAF score of 80. (Tr. 377-80, 503). The ALJ noted her examination findings did not support the establishment of a severe mental impairment (Tr. 503).

He also specifically discussed the opinions of the state agency psychologists. Regarding Dr. Mertens' opinion, he gave "great weight" to her opinion that Claimant did not have a severe mental impairment, noting the opinion was consistent with the medical evidence discussed in the decision. (Tr. 506). He then moved on to the opinion from Dr. Barnett, noting he also determined Claimant did not suffer from a severe mental impairment. (Tr. 507). Regarding Dr. Kampschaefer's opinion that Claimant did suffer from

9

a severe mental impairment, the ALJ specifically set forth her findings and determined "the medical evidence of record discussed above does not support the finding of a severe mental impairment, nor does it support limiting the [C]laimant socially, as described in examination findings and in the [C]laimant's own reports." (Tr. 507). Lastly, the ALJ discussed Dr. Goodrich's determination that Claimant did not suffer from a severe mental impairment, which he determined was "consistent with the longitudinal treatment record as discussed above." (Tr. 507).

Claimant contends that the ALJ failed to explain the inconsistencies in the state agency psychologist's opinions when determining Claimant did not suffer from a severe mental impairment. However, with the exception of the opinion from Dr. Kampschaefer, the other state agency psychologists all determined Claimant's mental impairment was non-severe. Regarding Dr. Kampschaefer's opinion, the ALJ addressed her opinion that Claimant suffered from a severe mental impairment and the specific functional limitations she included for Claimant. He referenced Claimant's own report, which the ALJ had previously discussed in the decision, and examination findings. The only mental examination findings discussed by the ALJ were the findings of Dr. Shaver, which he discussed in detail in the decision. He determined Dr. Shaver's findings did not support the finding of a severe mental impairment. (Tr. 503, 507).

The Court finds no error in the ALJ's consideration of the state agency psychologist's opinions. In reaching his step-two determination that Claimant's mental impairment was non-severe, the ALJ discussed the opinion evidence pertaining to Claimant's mental impairment, and he provided reasons for rejecting Dr. Kampschaefer's differing opinion.

**Step Five Determination**

Claimant contends the ALJ failed to include Claimant's mental limitation in the RFC or in the hypothetical questions to the VE. In the decision, the ALJ specifically noted when determining that Claimant's mental impairment was non-severe that the RFC "reflect[ed] the degree of limitation . . . [he] found in the 'paragraph B' mental function analysis." As discussed herein, the ALJ determined Claimant had no limitations in the four functional areas, resulting in the ALJ not including any mental functional limitations in the RFC. Thus, he only included those limitations he found to exist in his hypothetical question to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993). The Court finds no error by the ALJ at step five.

11

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2020.

Kimberly E. West
United States Magistrate Judge
Eastern District of Oklahoma